JAMES PAPAS, d/b/a Papas Trucking and Towing, Plaintiff-Appellee, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (3rd Division)   No. 1—88—3561

Opinion filed April 18, 1990.

Judson H. Miner, Corporation Counsel, of Chicago (Kelly R. Welsch, Assistant Corporation Counsel, of counsel), for appellant.

Peter N. Kamberos and Maria Pappas, both of Kamberos & Pappas, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Defendant, City of Chicago, appeals from the judgment entered in favor of plaintiff, James Papas, d/b/a Papas Trucking and Towing, after a bench trial of his breach of contract action. Defendant argues that plaintiff failed to prove that he had a contract under defendant's "machinery rental program" for the rental of trucks at a rate of $48 an hour because plaintiff was hired under a separate "hired truck program" which used rates established by a tariff bureau. Defendant also argues that it could not be estopped from denying the existence of a contract under this program.

Plaintiff filed a complaint against defendant which alleged in count I that in June 1980, defendant advertised for bids on a contract for work; that plaintiff entered into a written agreement with defendant's department of purchases on August 8, 1980; that defendant failed to compensate plaintiff at the rate of $48 an hour for each eight-hour day for the rental of a tractor and trailer rig as scheduled in their contract; and that defendant instead compensated plaintiff at a rate of $27 an hour. Plaintiff alleged in count II that in June 1981, defendant advertised for bids on a contract for work; that plaintiff entered into a written agreement on June 17, 1981; and that defendant again failed to compensate plaintiff for the agreed $48-an-hour rate.

Defendant alleged in an affirmative defense that plaintiff was hired under the hired truck program, which paid $27 an hour for truck rentals from February 1981 through August 1981 and $32.50 an hour from September 1981 to April 1983.

Plaintiff testified at trial that he submitted a bid in May 1980 to defendant's purchasing department of $20 an hour for trailers and $28 an hour for tractors with drivers for a total of $48 an hour. He submitted bids for an eight-hour shift for a transport trailer and for a tractor. The other terms of the bid were that plaintiff paid for fuel, insurance, depreciation and the driver. After he submitted his bid, he received a letter and a contract. Plaintiff no longer had a copy of that letter in his possession, but a letter he received dated July 1, 1981, from defendant's department of purchases, contracts and supplies was similar to the 1980 letter and stated in part:

"Under separate cover we are sending you our short form agreement No. CN 1808 covering the rental of construction equipment on which you quoted June 9, 1981.

The various departments and agencies will contact you direct [sic] as and when they have need for your equipment on a rental basis.

*Payment will be made at the rates set forth on your proposal* of June 9, 1981, *which represents the prices you quoted.*

Each department will issue a sub-order (Form CF-GS-3) direct [sic] to you showing all details of any equipment they may be renting from you. From this sub-order you may then prepare an invoice in triplicate (on City Form No. CP-45) and forward direct [sic] to the Using Department for auditing and certification. * * *

Nothing herein is to be construed as an obligation on the part of the City to hire any equipment whatsoever, and nothing is to be construed as an obligation on the part of the Contrac-

tor to furnish any equipment when and if called." (Emphasis added.)

The agreement dated August 8, 1980, from defendant stated in part:

"Construction *equipment as required on rental basis of when, as, and if needed* during the period of July 1, 1980 to June 30, 1981 *in accordance with your quotation on file* in the office of the Purchasing Agent, dated 6/9/80 full maintenance and insurance for equipment rented with or without operator.

\* \* \*

The City reserves the right to cancel this contract upon notification, by a 30 day notice." (Emphasis added.)

Plaintiff further testified that he received a telephone call from the department of streets and sanitation to report to work on approximately February 12, 1981, and that he dispatched two trucks. After each day of work, plaintiff completed a form entitled "hired equipment daily activity report," which stated the times and locations worked. These forms were used by plaintiff to prepare an invoice at the end of the month. At the end of February 1981, plaintiff submitted a bill to defendant but he did not receive payment as expected the next month. He contacted the purchasing department at the end of March; James Arnold told plaintiff that he would receive his money but that defendant was late in making payments.

The first time plaintiff received payment was in June for work performed in February through April but he was not paid the amount billed. He received back his invoice dated February 1981 with the rate changed from $48 to $27 and the number of hours changed from 90 to 88 hours. Subsequent invoices were also altered. Plaintiff complained in June to James Arnold and Mr. Buczkowski of the department of purchasing regarding his payment for work performed in May. He was told that defendant did not have any money but that he would be paid. Plaintiff also spoke to Bob Nolan and Leonard Rendak in the controller's department and was told that he was to be paid the $27 rate. In June he complained to Commissioner Donovan of the department of streets and sanitation about the shortage and was told that he would be paid. He continued to complain to all these departments.

Plaintiff further testified that he submitted a bid in June for the period July 1, 1981, through June 30, 1982, at the same $48 total hourly rate. He received the July 1, 1981, letter and an agreement dated July 17, 1981, from the department of purchases. (The 1981 agreement was almost identical to the 1980 agreement.) Plaintiff continued to work for defendant through 1981 and into 1982.

John Halpin testified for defendant that he was deputy commis-

sioner of the department of streets and sanitation from October 1981 to September 1985. In the hired truck program, the rates were those set by a tariff bureau, and trucks were hired only when needed.

Leonard Rendak, an auditor in defendant's comptroller's office, testified for defendant that from February 1981 through April 1983 he was in the internal audit department and audited the hired truck payroll. Plaintiff was one of the vendors on the hired truck payroll from 1981 to 1982 and possibly 1983. Plaintiff was paid in 1981 and 1982 for dump and semi dump trucks at the tariff rate of $27 an hour, which was increased to $32.50 an hour. Sometimes the rates of pay on plaintiff's invoices were different from what the payroll indicated. All the truck vendors on the hired truck payroll were paid from the same schedule of rates. Rendak applied the tariff rates to plaintiff's trucks and reduced the rates noted on plaintiff's invoices from $48 an hour to the appropriate rates. Plaintiff asked him numerous times in 1981 and 1982 why he was not receiving the higher rate, and Rendak explained that he was getting paid the tariff rate.

Robert Nolan testified for defendant that he had worked for defendant's controller's office and that plaintiff complained to him about his rate of pay. Nolan told plaintiff that he was being paid the appropriate rates under the hired truck payroll.

Richard Stark, Jr., testified for defendant that he was an assistant commissioner with defendant's department of streets and sanitation. From December 1979 through October 1987, he kept track of the trucks and equipment in the hired truck program. The commissioner was responsible for hiring under the program and pursuant to the commissioner's advice, Stark would sign up a vendor. In either late 1980 or early 1981, he had a meeting with plaintiff and with the commissioner, who asked Stark if there was room for plaintiff's trucks. Stark added plaintiff to the "hired truck roll." Stark told plaintiff the rate of pay, and plaintiff never complained to him about the rate of pay.

During 1981 to 1983, Stark was not allowed to hire a vendor from the machinery rental book because the vendors charged different rates for trucks and defendant's policy was not to pay different rates for the same job. Truckers were not allowed to be paid from the machinery rental book and were hired according to the tariff rates. Rather, heavy machinery such as bulldozers and cranes were hired from the machinery rental book. A trucker who was hired under the rental book would have an individual contract number; a suborder form would not be issued to a vendor that was hired on the hired truck payroll. Plaintiff was never issued a suborder form.

Marian Zintak of defendant's comptroller's office testified for defendant that, from February 1981 through April 1983, he worked in the department of purchasing auditing all payments of contract and purchase order type vouchers and processing payments to vendors under the machinery rental program. Plaintiff had a machinery rental contract. A truck vendor on the hired truck payroll would not be issued a suborder form.

Plaintiff testified that he had a conversation with Stark in 1980 or 1981 in the commissioner's office, but the rate of pay was not mentioned.

The trial court found in favor of plaintiff.

Defendant argues that plaintiff did not establish a valid contract for $48 an hour under the machinery rental program and that defendant could not be estopped from denying the existence of a contract under the program. Defendant argues that plaintiff did not establish that his offer to rent trucks for $48 an hour was accepted by defendant or that defendant made an enforceable promise to plaintiff in return for his bid. Defendant argues that the form plaintiff received was not an acceptance of plaintiff's bid because by its terms defendant did not agree to rent any equipment from plaintiff; rather, defendant only agreed to rent his equipment "when, as and if needed" from July 1, 1980, to June 30, 1981 (and then in the second letter from July 1, 1981, to June 30, 1982). Defendant argues that a promise which promises nothing is not sufficient to make a contract enforceable. Plaintiff responds that the contract was akin to a requirements contract and that the promise to rent on an as needed basis was not illusory and constituted sufficient consideration.

■ An illusory promise promises nothing and leaves the alleged promisor's future action subject to his own future will. (1 A. Corbin, Contracts §145, at 627-28 (2d ed. 1963).) Although defendant did not promise that it would hire plaintiff's trucks, defendant promised that if it did hire them during a particular period, it would pay the rate that plaintiff bid. (*Cf. Dwyer v. Graham* (1983), 99 Ill. 2d 205, 209, 457 N.E.2d 1239 (only tenancy at will created by lease agreement that permitted tenants to lease "as long as desired").) Defendant's promise was not illusory.

■ An acceptance must give in return for the offer exactly the consideration requested. (1 S. Williston, Contracts §73, at 238 (3d ed. 1957).) Plaintiff did not make bids for rental on particular dates but offered rates which it would charge if defendant rented trucks during a particular period. The agreements sent by defendant accepted plaintiff's bids of rates by ordering construction equipment as needed "in

accordance with your quotation on file." That payroll and auditing forms and procedures were consistent with hiring plaintiff under the hired truck program is irrelevant to the issue whether defendant accepted plaintiff's offer.

■ Defendant also argues that it was not clear but if the trial court applied estoppel against it, the application was erroneous because estoppel against a public body is disfavored and may be raised only to prevent fraud or injustice. The trial court found that defendant accepted plaintiff's bid and did not find that defendant was estopped from denying that plaintiff had a contract under the machinery rental program. Therefore the issue of estoppel need not be addressed.

The judgment of the trial court is affirmed.

Affirmed.

RIZZI and WHITE, JJ., concur.