W.E. ERICKSON CONSTRUCTION, INC., *et al.*, Plaintiffs-Intervenors-Appellants, v. CHICAGO TITLE INSURANCE COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—92—3391

Opinion filed September 22, 1994.

Marty J. Schwartz, of Chicago, for appellants.

Thomas F. Geselbracht and Jean McGreevy Monat, both of Rudnick & Wolfe, of Chicago, for appellee.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiffs W.E. Erickson Construction, Inc., Elmhurst National Bank, and Wilbert E. Erickson (hereafter, Erickson) appeal a summary judgment for defendant Chicago Title Insurance Company (Chicago Title) on Erickson's complaint for breach of contract and negligent misrepresentation. Erickson also appeals the denial of a motion for leave to amend the complaint to include a count for fraudulent misrepresentation. We affirm.

Erickson contracted with Congress-Kenilworth Corporation (C-K) in 1981 to build a water slide as part of an amusement park in Crestwood, Illinois. Earlier that year, C-K obtained whatever interest it had in the property when it solicited and obtained a quitclaim deed from a former owner. C-K's title to the property and that of the party who quitclaimed it is not an issue in this appeal.

The contract between Erickson and C-K provided for monthly progress payments from C-K. Erickson applied for a payment of $246,958 on June 16, 1981. C-K was unable to make the payment. Instead, it passed a corporate resolution on June 20, 1981, which authorized transfer of its interest in the property to Erickson as security for loans obtained by Erickson to complete construction. C-K then executed a warranty deed to Betty J. Eide, a nominee for Erickson. Eide in turn executed a quitclaim deed to Elmhurst National Bank as trustee for Erickson, the beneficiary of the trust.

Two days later, on June 22, 1981, Erickson applied for title insurance. The same day Chicago Title issued a title commitment which indicated that Elmhurst National Bank land trust held title to the property. The commitment provided $5,500 of coverage.

Erickson completed work on the project on July 3, 1981, and the water slide opened the next day. In August 1981, C-K received a letter from the Army Corps of Engineers stating that the Federal government held title to the property and that C-K was unlawfully encroaching upon it. C-K then executed a lease with the Army Corps which allowed C-K to continue to operate the water slide.

C-K then sued Chicago Title. Erickson intervened, claiming damages from C-K and Chicago Title in excess of $450,000. C-K settled its claims with Chicago Title and Erickson and is not a party to this appeal. Related cases are reported at *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1986), 115 Ill. 2d 119, 503 N.E.2d 233, and *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 477 N.E.2d 513.

Erickson's complaint against Chicago Title contained two counts: negligent title search and breach of title commitment. Erickson later substituted a negligent misrepresentation count for the negligent title search count and added a count for breach of implied covenant. Erickson was also allowed to add a third-party beneficiary claim.

In February 1984, Chicago Title moved for summary judgment on the negligent misrepresentation and implied covenant counts. It also moved for partial summary judgment for any amount in excess of $5,500 on the count for breach of title commitment. The court granted summary judgment on the negligent misrepresentation count and the breach of implied covenant count. The court also granted

partial summary judgment on the breach of contract action, limiting possible recovery to $5,500. In November 1986, the court granted Chicago Title's motion to strike and dismiss Erickson's third-party beneficiary claim. So, at the end of 1986, the only count remaining against Chicago Title in Erickson's complaint was breach of contract with damages limited to $5,500.

Trial began four years later, in October 1990. At the request of the parties, the court recessed the trial for 60 days while they negotiated a settlement, but no agreement was reached.

No more pleadings were filed until March 1992, when Erickson moved to add a count for fraudulent misrepresentation. The court denied the motion. The parties then filed cross-motions for summary judgment on the remaining breach of contract claim, and Erickson moved to vacate the partial summary judgment limiting damages to $5,500. The court granted Chicago Title's motion for full summary judgment.

Erickson first argues the court erred when it granted Chicago Title's motion for full summary judgment. Erickson alleges that Chicago Title breached the title commitment because the Federal government held title to the property when Chicago Title issued the commitment. The court ruled that the commitment could only be relied upon to apply to transactions which took place after the commitment was issued. Erickson, the court noted, acquired whatever interest it had in the property before it obtained the title commitment.

Paragraph 3 of the conditions and stipulations of the Chicago Title commitment states:

> "Liability of the Company under this Commitment shall be *** only for actual loss incurred in reliance hereon in undertaking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment."

Erickson does not dispute that it acquired whatever interest it had in the property on June 20, 1981, and that it applied for the commitment on June 22, 1981. The quitclaim deed with Erickson as beneficiary was recorded on June 22, 1981. The effective date was June 23, 1981. Chicago Title contends, and we agree, that because Erickson acquired whatever interest it had in the property before acquiring the title commitment, Erickson could not have relied on the commitment.

Erickson argues that under this analysis "Erickson paid a premium to Chicago Title in return for nothing," which renders the

title commitment illusory. Erickson's argument is more an illusion than the title commitment.

■ An illusory promise appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything. (*Papas v. City of Chicago* (1990), 196 Ill. App. 3d 1057, 554 N.E.2d 607; J. Calamari & J. Perillo, Contracts § 4—17 (2d ed. 1977).) An illusory promise is also defined as one in which the performance is optional. (*Dasenbrock v. Interstate Restaurant Corp.* (1972), 7 Ill. App. 3d 295, 287 N.E.2d 151; J. Calamari & J. Perillo, Contracts § 4—17 (2d ed. 1977).) Either way, it is not sufficient consideration to support a contract. See *Mimica v. Area Interstate Trucking, Inc.* (1993), 250 Ill. App. 3d 423, 620 N.E.2d 1328.

■ Chicago Title's promise under the title commitment is neither empty nor optional. The commitment only excludes recovery for damages caused by a defect in title if the insured did not *rely* on the commitment to acquire the title. It clearly covers losses suffered by an insured who relies on the commitment. Such a promise is not illusory, but contingent upon the loss occurring after the insurance takes effect. That Erickson could never show such losses resulting from reliance does not negate the promise of the title company to reimburse were Erickson able to do so.

Erickson additionally argues the commitment is ambiguous because "one provision obligated Chicago Title to issue a title policy in conformity with the commitment and one provision purportedly provided Chicago Title had no liability if it refused to issue a policy." Erickson then states that the trial court's ruling "frustrates the intent of the parties and produces an absurd result," because Erickson contracted for an insurance policy to guarantee good title, yet is denied recovery when the title is found to be defective.

■ When clear and unambiguous, the words of a contract or insurance policy should be given their plain and ordinary meaning. (*Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.* (1993), 252 Ill. App. 3d 96, 623 N.E.2d 1036.) A reasonable interpretation of the clause limiting recovery to losses suffered only in reliance on the policy is obvious from what it says: that the insured is covered for losses which result from *reliance* on the commitment "to acquire or create the estate or interest or mortgage *** covered in this Commitment." Ambiguity can only be read into this language if it is assumed that an insurance policy can be interpreted under some circumstances to apply to a loss that takes place before the policy takes effect. Such an interpretation would have an interesting impact on the insurance industry.

■ It is undisputed that the Chicago Title commitment omits any

mention of an interest in the land held by the Federal government. Had Erickson relied on the commitment in its acquisition of the Crestwood property only to discover that the Federal government owned the property, Erickson would be entitled to damages. It is also undisputed that the chronology of this case makes such reliance an impossibility.

■ Erickson also contends that the partial summary judgment on the breach of contract count limiting Erickson's potential recovery to $5,500 and excluding recovery for attorney fees is error. Chicago Title filed two motions for summary judgment on the breach of contract count. Because we affirm the second motion for full summary judgment filed by Chicago Title in this action, the court's limitation of damages to $5,500 on the first motion is irrelevant.

■ Erickson next argues that the court erred when it granted summary judgment on the negligent misrepresentation count, Chicago Title responds that summary judgment is proper because an exclusive remedy clause in the title commitment limits recovery only to grounds based on the commitment.

Paragraph 4 of the conditions and stipulations of the commitment provides:

> "Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title *** covered by the Commitment must be based on and are subject to the provisions of this Commitment."

An exclusive remedy clause will be enforced unless it violates public policy or something in the social relationship of the parties works against upholding the clause. *Harris v. Walker* (1988), 119 Ill. 2d 542, 519 N.E.2d 917.

Erickson cites *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409: "One cannot exempt himself from negligence by a contractual exculpatory clause in cases where a positive duty has been imposed by law." (*Zimmerman*, 156 Ill. App. 3d at 165.) We have no quarrel with *Zimmerman*. Chicago Title is not defending on the grounds that its exculpatory clause relieves it from positive duties imposed by the language of its commitment. It defends on the grounds that the language of the commitment does not impose a duty when the loss occurs before the commitment to insure takes effect.

Erickson also relies on *McLaughlin v. Attorneys' Title Guaranty Fund, Inc.* (1978), 61 Ill. App. 3d 911, 378 N.E.2d 355, and *Dinges v. Lawyers Title Insurance Corp.* (1982), 106 Ill. App. 3d 188, 435 N.E.2d 944, in support of its argument that a title insurer must search the records and examine the applicable law before issuing a title

commitment or policy. We have no quarrel with these cases. But, in neither case did the court impose liability in tort. Rather, the court found a contractual duty to search and examine inherent in a contract of title insurance. We do not read the cases to support a public policy against an exclusive remedy clause which only allows recovery on the commitment.

■ Finally, Erickson argues that the trial court erred when it denied its motion to amend the complaint to add a cause of action for fraudulent misrepresentation.

This litigation began in 1982. The first mention of fraud surfaced in 1992. The Code of Civil Procedure states that amendments may be allowed on just and reasonable terms at any time before final judgment. (Ill. Rev. Stat. 1991, ch. 110, par. 2—616(a).) A trial court has discretion to allow an amendment to the pleadings or to terminate the litigation. (*Latex Glove Co. v. Gruen* (1986), 146 Ill. App. 3d 868, 497 N.E.2d 466.) The denial of a motion to amend will be reversed if the trial court abused its discretion. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) A court abuses its discretion if allowing the amendment furthers the ends of justice. *Maus v. Marathon Petroleum Co.* (1992), 229 Ill. App. 3d 864, 594 N.E.2d 393.

Our supreme court has set out four questions to ask when considering whether an amendment furthers the ends of justice: (1) does the proposed amendment cure the defective pleading? (2) are other parties prejudiced? (3) is the proposed amendment timely? and (4) were there previous opportunities to amend? *Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273, 586 N.E.2d 1211.

The court in *Loyola* found each element weighed in favor of allowing amendment and reversed the trial court. The amendment in *Loyola* contained facts in support of an existing count for breach of express warranty. The amended pleading contained allegations which were modifications of those in the original complaint. The court held that the amendment cured a defect in the pleadings because it expanded on the original complaint. (*Loyola*, 146 Ill. 2d at 274.) The court found that the amendment was timely where the plaintiff filed the amendment 17 months after filing the complaint. The court next reasoned that the defendant would not be prejudiced because the plaintiff had given notice of intent to file the amendment much earlier and the case was not yet set for trial. (*Loyola*, 146 Ill. 2d at 275.) Finally, the court found that it was reasonable that plaintiff first attempted to amend the complaint only two months after the trial court granted summary judgment for defendants on two of three counts. *Loyola*, 146 Ill. 2d at 276.

Our case differs markedly on its facts. Erickson's proposed cause of action for fraudulent misrepresentation does not cure an existing defect in the pleadings. The count for fraudulent misrepresentation relies on mental states never before pled: knowledge or belief of the falsity of the title in the party claiming it and an intention to induce the other party to act. Until raising the fraud theory in 1992, Erickson never alleged that Chicago Title knew the title was defective when it issued the commitment. The count does not represent a new theory supported by facts alleged earlier. Nor does it allege new facts to support theories in the earlier complaint: negligent title search or breach of the title commitment.

Second, we believe Chicago Title would be prejudiced if the amendment were allowed. Erickson claims that Chicago Title already knows of facts in support of the fraud count and so discovery would not be required. But Erickson admits that the Chicago Title employee who issued the commitment no longer works for Chicago Title and has yet to be located. New allegations of mental states require a substantially different defense for Chicago Title which, in turn, requires separate investigation. (See *Mundt v. Ragnar Benson, Inc.* (1975), 61 Ill. 2d 151, 335 N.E.2d 10.) Although no trial date was set when Erickson moved to amend, trial had begun in October 1990 and was recessed until March of 1992 only because the parties indicated an intention to settle.

Third, the amendment was not timely. Erickson filed the complaint in 1982. It moved to add the count for fraud more than 10 years later. We cite the trial court's summary:

"At one time or the other, this complaint seems to have had a count for almost every known kind of relief in chancery. The plaintiff and the intervenors have had ample time, to my view, to get their complaint in precisely the form they'd like it ***. I think it is not appropriate that a complaint which has now celebrated its tenth anniversary and then some, be amended."

Fourth, Erickson had several opportunities to amend the complaint earlier. The court allowed amendments when Erickson moved for leave to amend in 1983 and 1984. Erickson concedes this, but argues, curiously, that the fraud count became necessary when the court limited recovery to a maximum $5,500 on the contract count. Ignoring the six years that elapsed between partial summary judgment and the fraud count, Erickson contends the amendment is justified because it makes possible a larger recovery.

Amendments may be allowed where they allow a party to fully present a claim. (See *Kupianen v. Graham* (1982), 107 Ill. App. 3d 373, 437 N.E.2d 774.) However, new theories which may lead to larger

recoveries are not the same as amendments which correct a claim already presented. In *Cross v. Ainsworth Seed Co.* (1990), 199 Ill. App. 3d 910, 557 N.E.2d 906, cited by Erickson, plaintiff sought to amend to add a previously named third-party defendant to an existing allegation. The court noted "plaintiff was merely restructuring her complaint so that she could obtain relief." *Cross*, 199 Ill. App. 3d at 926.

Erickson did not attempt to "restructure" its complaint. The fraud count is a new cause of action filed after all other theories had been rejected. We conclude that the rule favoring amendments to allow parties to "fully present their claim" does not include amendments that do not expand previous counts and are admittedly intended to increase the size of the recovery. Nothing prevented Erickson from including multiple theories in its original complaint or in either of the two earlier amendments in support of a large recovery.

Erickson also argues that Chicago Title was granted leave to amend under similar circumstances and cites *Loyola* for the proposition that plaintiff and defendant deserve equal consideration. (*Loyola*, 146 Ill. 2d at 276.) The argument is misleading. The court granted Chicago Title leave to amend its answer to the complaint filed by C-K, not to Erickson's complaint. The posture of the parties is distinguishable. While the amendment to the answer to the C-K complaint came late, further discovery was not required, C-K did not object, and no previous order barred amendments to the pleadings. We find no abuse of discretion in the trial court's decision to bring this litigation to an end.

Affirmed.

HOFFMAN, P.J., and JOHNSON, J., concur.