NOTICE

Decision filed 07/25/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-04-0793

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| A. JEFFREY HICKS, d/b/a FINANCIAL PLANNING ADVISORS, INC., Individually and on Behalf of All Others Similarly Situated, | ) Appeal from the<br>) Circuit Court of<br>) Madison County.<br>) |
| Plaintiff-Appellant, | ) |
| v. | ) No. 02-L-1512<br>) |
| AIRBORNE EXPRESS, INC., | ) Honorable<br>) Phillip J. Kardis, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiff, A. Jeffrey Hicks (Hicks), doing business as Financial Planning Advisors, Inc., individually and on behalf of all others similarly situated, appeals the circuit court's order granting a summary judgment in favor of the defendant, Airborne Express, Inc. (Airborne). On appeal, Hicks argues that the circuit court erred in holding that the parties' contract limited Hicks's remedy. We affirm.

FACTS

Hicks filed a class-action complaint against Airborne, a courier service that provides package transportation and delivery services. In his complaint, Hicks alleged that Airborne breached its shipping contract by charging customers higher rates for express delivery and failing to deliver the packages by the agreed delivery time. Hicks sought compensation for the difference in value between the service customers requested and the service they received.

1

Hicks shipped packages using Airborne's Flight-Ready prepaid shipping service. Pursuant to this service, Hicks purchased the Flight-Ready shipment envelope used to package his shipment. Airborne guaranteed that Hicks's Flight-Ready shipment envelope would be delivered by noon the next day. When Hicks's delivery was delayed, Airborne provided Hicks with a free Flight-Ready envelope pursuant to the Flight-Ready guarantee.

Airborne's Flight-Ready order form, used to order Flight-Ready envelopes, stated:

"**THE FLIGHT-READY GUARANTEE**: Airborne Express guarantees that your pre[]purchased domestic Flight-Ready shipment will arrive on time (as stated in the current Service Guide)–or Airborne will give you another Flight-Ready domestic express envelope free of charge."

Airborne's Flight-Ready envelope stated, in pertinent part:

"**Service Conditions**

*** Use of Flight-Ready constitutes your agreement to the service conditions stated here [and] in our published tariffs and current Service Guide (available on request). No one is authorized to alter or modify those terms.

**Limitations of Liability**

*** We shall not be liable in any event for special, incidental[,] or consequential damages, including but not limited to loss of profits or income.

* * *

**Claims**

Filing claims for delayed, lost[,] or damaged shipments is subject to time limits. Consult the Service Guide for full details."

On March 22, 2004, Airborne filed a motion for a summary judgment, arguing that Airborne provided Hicks with the only contractual remedy to which he was entitled, a prepaid Flight-Ready envelope. On November 23, 2004, after hearing arguments, the circuit

2

court entered a summary judgment in favor of Airborne, finding that the parties had agreed to an exclusive remedy, *i.e.*, another Flight-Ready envelope, for Airborne's breach of the contract to deliver Hicks's package by noon the next day. On December 15, 2004, Hicks filed a notice of appeal.

ANALYSIS

Airline Deregulation Act Preemption

Initially, we address whether Hicks's breach-of-contract action is preempted by the Airline Deregulation Act of 1978 (Airline Deregulation Act) (49 U.S.C. §41713(b)(1) (2000)), an argument raised in Airborne's brief on appeal. Hicks argues that Airborne waived this argument by failing to raise it as an affirmative defense in the circuit court. However, the waiver rule is a limitation on the parties and not the jurisdiction of this court. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 518 (2000). We choose to address the issue.

Pursuant to the preemption doctrine, which arises from the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), we examine whether Congress intended for federal law to preempt state law in a given case. *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152, 73 L. Ed. 2d 664, 674-75, 102 S. Ct. 3014, 3022 (1982); *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 633 (2004).

Section 41713(b)(1) of the Airline Deregulation Act expressly preempts the States from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." 49 U.S.C. §41713(b)(1) (2000). State common law is considered an "other provision having the force and effect of law" for purposes of this statute. *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000). Congress enacted the express-preemption provision in the Airline Deregulation Act "[t]o ensure that the States would not

3

undo federal deregulation with regulation of their own." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 119 L. Ed. 2d 157, 164, 112 S. Ct. 2031, 2034 (1992).

The Supreme Court first considered the scope of preemption under the Airline Deregulation Act in *Morales*, 504 U.S. 374, 119 L. Ed. 2d 157, 112 S. Ct. 2031. In holding that the Airline Deregulation Act preempted the application of state consumer protection statutes to airline advertisements, the Court stated that the statutory phrase "relating to"[1] expressed a broad preemptive purpose so that any claim that has "a connection with[] or reference to" an airline's prices, routes, or services is preempted under the statute. *Morales*, 504 U.S. at 384, 119 L. Ed. 2d at 167-68, 112 S. Ct. at 2037. However, the Court noted that state actions affecting airline prices, routes, or services " 'in too tenuous, remote, or peripheral a manner' " would not be preempted. *Morales*, 504 U.S. at 390, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21, 77 L. Ed. 2d 490, 503 n.21, 103 S. Ct. 2890, 2901 n.21 (1983)).

The Court next considered the Airline Deregulation Act's preemption clause in

---

[1] In reenacting Title 49 of the United States Code, Congress revised this clause in 1994 to read: "[A] State *** may not enact or enforce a law, regulation, or other provision having the force and effect of law *related* to a price, route, or service of an air carrier ***." (Emphasis added.) 49 U.S.C. §41713(b)(1) (1994). Congress intended that the revision make no substantive change. Pub. L. 103-272, §1(a), 108 Stat. 745 (1994).

4

*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 130 L. Ed. 2d 715, 115 S. Ct. 817 (1995). The Court in *Wolens* held that contract claims against airlines, such as those involving frequent-flyer programs, even when related to prices, routes, or services, are not preempted by the Airline Deregulation Act when they merely seek to enforce the parties' "own, self-imposed undertakings." *Wolens*, 513 U.S. at 228, 130 L. Ed. 2d at 725-26, 115 S. Ct. at 824. The Court held that the Airline Deregulation Act's preemption prescription bars state-imposed regulation of air carriers but allows room for court enforcement of contract terms set by the parties themselves. *Wolens*, 513 U.S. at 228-29, 130 L. Ed. 2d at 726, 115 S. Ct. at 824.

The Court in *Wolens* noted that the word series "law, rule, regulation, standard, or other provision" connotes official, government-imposed policies, not the terms of a private contract. *Wolens*, 513 U.S. at 229 n.5, 130 L. Ed. 2d at 726 n.5, 115 S. Ct. at 824 n.5. The Court also noted that the phrase "having the force and effect of law" is most naturally read to reference binding standards of conduct that operate irrespective of private agreements. *Wolens*, 513 U.S. at 229 n.5, 130 L. Ed. 2d at 726 n.5, 115 S. Ct. at 824 n.5. The Court held that the Airline Deregulation Act was designed to promote "maximum reliance on competitive market forces" (49 U.S.C. App. §1302(a)(4) (1988)) and that market efficiency requires an effective means to enforce private agreements. *Wolens*, 513 U.S. at 230, 130 L. Ed. 2d at 726, 115 S. Ct. at 824. The Court limited its breach-of-contract exception to actions confined to the terms of the parties' bargain "with no enlargement or enhancement based on state laws or policies external to the agreement." *Wolens*, 513 U.S. at 233, 130 L. Ed. 2d at 728, 115 S. Ct. at 826; see also *Smith v. Comair, Inc.*, 134 F.3d 254, 258 (4th Cir. 1998) (the contract action could only be adjudicated by reference to federal law and policies external to the parties' bargain and, therefore, was preempted by the Airline Deregulation Act).

Accordingly, in deciding whether contract claims are preempted, we distinguish between obligations dictated by the state and those voluntarily undertaken by the airline. See *Wolens*, 513 U.S. at 233, 130 L. Ed. 2d at 728, 115 S. Ct. at 826. When parties privately negotiate a contract's terms and an action is later filed in state court for a breach of those terms, there is generally no specter of state-imposed regulation. *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 753 (Tex. 2003). "[T]he enforcement of a contractual commitment voluntarily undertaken does not amount to state enactment or enforcement of a law that the [Airline Deregulation Act]'s preemption provision forbids." *Delta Air Lines, Inc.*, 116 S.W.3d at 754.

In the present case, Hicks's breach-of-contract action against Airborne is not preempted by the Airline Deregulation Act because the court's concern is restricted to the parties' bargain. Hicks's action is based on Airborne's self-imposed obligation to deliver packages by a specified time and does not involve external state policy. Accordingly, Hicks's breach-of-contract claim is based upon Airborne's written and self-imposed undertaking, can be adjudicated without reference to law and policies external to the parties' bargain, and is not preempted by the Airline Deregulation Act. See *Wolens*, 513 U.S. at 232-33, 130 L. Ed. 2d at 728, 115 S. Ct. at 826; see also *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996) (the plaintiff's claim that the defendant breached its agreement to honor confirmed reservations involved privately ordered obligations and was not preempted by the Airline Deregulation Act); *Shubert v. Federal Express Corp.*, 306 Ill. App. 3d 1056, 1059 (1999) (the written undertaking of the air carrier was not preempted even though it related to rates or service).

## Breach of Contract

Hicks argues that the contract language guaranteeing delivery by a specified time or a free Flight-Ready shipment envelope did not create the exclusive remedy for a breach of

6

Airborne's promise to deliver by the specified time. Airborne counters that the contract between it and Hicks was clear and unambiguous and provided the exclusive remedy for a delayed delivery–a free Flight-Ready shipment.

Cargo Airline Association (Cargo) submitted an *amicus curiae* brief in support of Airborne. Cargo argues that Hicks is not entitled to common law damages because there was no difference between the value of the shipped items at the time they arrived and the value of the shipped items at the time they should have arrived. See *Sangamon & Morgan R.R. Co. v. Henry*, 14 Ill. 156, 158 (1852) (the measure of damages for failing to deliver hogs within the contract time was the difference between the value of the hogs at the time they arrived and their value at the time they should have arrived). Cargo argues that because Hicks is not entitled to a common law remedy, he is only entitled to seek the remedy explicitly provided in his contract with Airborne, *i.e.*, a free Flight-Ready shipment.

A summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue regarding any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004); *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 523-24 (2004). The circuit court's decision to grant a summary judgment presents a question of law and is subject to *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

The primary objective in construing a contract is to give effect to the intention of the parties involved. *Schek v. Chicago Transit Authority*, 42 Ill. 2d 362, 364 (1969). The parties' intention must be ascertained from the plain and ordinary meaning of the language of the contract. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 839 (2002); *Board of Regents v. Wilson*, 27 Ill. App. 3d 26, 31 (1975). A contract is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since we presume that every clause

7

in the contract was inserted deliberately and for a purpose. *Martindell v. Lake Shore National Bank*, 15 Ill. 2d 272, 283 (1958); *Board of Regents*, 27 Ill. App. 3d at 31.

"[T]he parties' rights under the contract are limited by the terms expressed therein." *O'Shield*, 335 Ill. App. 3d at 839. "[P]arties by an express agreement may contract for an exclusive remedy that limits their rights, duties[,] and obligations." *Board of Regents*, 27 Ill. App. 3d at 32; see also *O'Shield*, 335 Ill. App. 3d at 839. Illinois courts have recognized and enforced exclusive remedy provisions, even when the contract omits the word "exclusive," when the contract as a whole warrants that construction. *O'Shield*, 335 Ill. App. 3d at 839; *Omnitrus Merging Corp. v. Illinois Tool Works, Inc.*, 256 Ill. App. 3d 31, 34 (1993); *Veath v. Specialty Grains, Inc.*, 190 Ill. App. 3d 787, 797 (1989). "An exclusive remedy clause will be enforced unless it violates public policy or something in the social relationship of the parties works against upholding the clause." *W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.*, 266 Ill. App. 3d 905, 910 (1994).

A slight difference in contract language may justify the interpretation that the contract provides the buyer an exclusive remedy, as opposed to a privilege in addition to other remedies that he might have. *Standard Oil Co. of Indiana v. Daniel Burkhartsmeier Cooperage Co.*, 333 Ill. App. 338, 349 (1948) (each contract must be interpreted, for unquestionably a contract may provide for a sole remedy). While clauses limiting damages are not favored and must be strictly construed against a benefiting party, the basis for their enforcement is the strong public policy favoring the freedom of contract. *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.*, 226 Ill. App. 3d 507, 512 (1992). Public policy permits competent parties to contractually allocate business risks as they see fit. *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 72-73 (1983).

Pursuant to the parties' contract regarding the Flight-Ready shipment envelope,

8

Airborne guaranteed that it would deliver the shipment on time or provide Hicks with another Flight-Ready domestic express envelope free of charge. The contract precluded a broad range of potential damages and provided that no one could alter or modify its terms. See *CogniTest Corp. v. Riverside Publishing Co.*, 107 F.3d 493, 498 (7th Cir. 1997) (considering the contract language allowing the retention of outstanding advances if the agreement terminated prior to publication, in addition to a provision precluding a broad range of potential damages and the contract's integration clause, the court concluded that the retention remedy was intended to be exclusive). The contract's express language clearly provides that the replacement Flight-Ready envelope was Hicks's exclusive remedy if Airborne breached the contract by failing to deliver the package by noon the next day. See *O'Shield*, 335 Ill. App. 3d at 840 (the plaintiffs could not maintain a claim for specific performance because the contract created the exclusive remedy of terminating the contract); *Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 315 Ill. App. 3d 248, 256 (2000) (the exclusive remedy provisions of the contract limited the plaintiff to the price of replacement pipe); *W.E. Erickson Construction, Inc.*, 266 Ill. App. 3d at 910 (the contract created the exclusive remedy of allowing a recovery for only the losses suffered in reliance on the commitment); *Omnitrus Merging Corp.*, 256 Ill. App. 3d at 34-35 (the merger agreement created the exclusive remedy of indemnification); *Veath*, 190 Ill. App. 3d at 797-98 (the contract limited the measure of damages that would have otherwise been available under the Uniform Commercial Code); *Schultz v. Jackson*, 67 Ill. App. 3d 889, 893 (1979) (the contract language was sufficient to limit the plaintiff's remedy to the repair or replacement of defective parts and to rebut a presumption that contract remedies were cumulative to those in the Uniform Commercial Code); *J.D. Pavlak, Ltd. v. William Davies Co.*, 40 Ill. App. 3d 1, 4 (1976) (the contract language revealed that the parties intended the settlement formula to be the exclusive remedy); see also *Dow Corning Corp. v. Capitol Aviation, Inc.*, 411 F.2d 622,

9

625-26 (7th Cir. 1969) (the contract language allowing the purchaser to cancel the order and get a refund of the deposit if the delivery did not occur within 30 days created the exclusive remedy even though the contract did not use the word "exclusive").

Hicks and Airborne voluntarily chose to distribute the risks in a manner represented by the contract language. We find no public policy to bar the contract's exclusive remedy provision (see *Rayner Covering Systems, Inc.*, 226 Ill. App. 3d at 512), and nothing in the record justifies altering the contractual allocation adopted by the parties (see *J.D. Pavlak, Ltd.*, 40 Ill. App. 3d at 4). The language of the parties' contract limited Hicks to the exclusive remedy of a free Flight-Ready envelope if Airborne breached the contract by failing to deliver his shipment on time. Accordingly, the circuit court properly entered a summary judgment in favor of Airborne.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

GOLDENHERSH and McGLYNN, JJ., concur.

10

NO. 5-04-0793
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

<table>
<tr><td>A. JEFFREY HICKS, d/b/a FINANCIAL PLANNING ADVISORS, INC., Individually and on Behalf of All Others Similarly Situated,</td><td>)<br>)<br>)<br>)</td><td>Appeal from the<br>Circuit Court of<br>Madison County.</td></tr>
<tr><td> </td><td>)</td><td> </td></tr>
<tr><td>Plaintiff-Appellant,</td><td>)</td><td> </td></tr>
<tr><td> </td><td>)</td><td> </td></tr>
<tr><td>v.</td><td>)</td><td>No. 02-L-1512</td></tr>
<tr><td> </td><td>)</td><td> </td></tr>
<tr><td>AIRBORNE EXPRESS, INC.,</td><td>)</td><td>Honorable<br>Phillip J. Kardis,</td></tr>
<tr><td>Defendant-Appellee.</td><td>)<br>)</td><td>Judge, presiding.</td></tr>
</table>

**Opinion Filed**: July 25, 2006

**Justices**: Honorable Terrence J. Hopkins, J.

Honorable Richard P. Goldenhersh, J., and
Honorable Stephen P. McGlynn, J.,
Concur

**Attorneys for Appellant**

Gail G. Renshaw, Gary E. Peel, Gerald Walters, The Lakin Law Firm, P.C., 300 Evans Avenue, P.O. Box 229, Wood River, IL 62095-0229; Paul M. Weiss, Tod A. Lewis, Freed & Weiss, LLC, 111 West Washington Street, Suite 1331, Chicago, IL 60602; Malik R. Diab, Phillip A. Bock, Diab & Bock, 20 N. Wacker Drive, Suite 1741, Chicago, IL 60610; Timothy Campbell, The Campbell Law Offices, 3017 Godfrey Road, P.O. Box 505, Godfrey, IL 62035

**Attorneys for Appellee**

Karen L. Kendall, Craig L. Unrath, Heyl, Royster, Voelker & Allen, 124 S.W. Adams, Suite 600, Peoria, IL 61602; Robert H. Shultz, Jr., Joseph P. Whyte, Deborah A. Hawkins, Heyl, Royster, Voelker & Allen, 103 W. Vandalia Street, Suite 100, Edwardsville, IL 62025-0467; Edwin V. Woodsome, Jr., D. Barclay Edmundson, William W. Oxley, T. Jason White, Orrick, Herrington & Sutcliffe LLP., 777 South Figueroa Street, Suite 3200, Los Angeles, CA 90017-5855

**Attorneys for Amicus Curiae**

Stephen A. Alterman, Cargo Airline Association, 1220 19th Street, NW, Washington, DC 20036; Robert K. Spotswood, Kenneth D. Sansom, Michael T. Sansbury, John R. Parker, Jr., Spotswood LLC 940 Concord Center, 2100 Third Avenue North, Birmingham, AL 35203