MARC S. COHEN, and Similarly Situated Parties, Plaintiff-Appellant, v. McDONALD'S CORPORATION, and its Franchisees, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—02—2110

Opinion filed February 13, 2004.

Sudekum, Cassidy & Shulruff, Chtrd., of Chicago (Lawrence I. Shulruff and Florence M. Schumacher, of counsel), for appellant.

Sonnenschein, Nath & Rosenthal, of Chicago (John C. Koski and Alan H. Silberman, of counsel), for appellees.

JUSTICE REID delivered the opinion of the court:

The appellant, Marc S. Cohen, appeals from the trial court's order that dismissed his class action lawsuit for consumer fraud and deceptive business practices and common law fraud against defendants McDonald's Corporation and its franchisees, and McDonald's Restaurants of Illinois (McDonald's). Cohen's complaint alleged that McDonald's violated federal nutritional labeling regulations with regard to its Happy Meal® menu item. On appeal, Cohen argues that the trial court erred because: (1) his cause of action is not barred by the doctrines of preemption or primary jurisdiction and (2) his complaint sufficiently stated a cause of action. For the reasons that follow, we affirm the decision of the trial court.

## BACKGROUND

On February 5, 2002, Cohen filed a two-count class action lawsuit against McDonald's for: (1) consumer fraud and deceptive business practices and (2) common law fraud. His complaint alleges that one of the food products that McDonald's sells is the Happy Meal®. A Happy

Meal® consists of a McDonald's food entree, a small order of french fries, a small drink and a toy. Around 1990, McDonald's developed a marketing strategy to expand Happy Meal® sales by targeting children ages one to three. As part of this marketing strategy, McDonald's entered into an agreement with Fisher-Price. The agreement provided that Fisher-Price would design toys, for children ages one to three, to be distributed with the Happy Meal®.

In 1995 McDonald's began making nutritional information for its food products available to its customers in the following ways: (1) displaying documents known as "McDonald's Nutrition Facts" on posters and signs in its restaurants, (2) making copies of the McDonald's Nutrition Facts for customers on 8½- by 11-inch paper, (3) displaying and making available McDonald's Nutrition Facts on the Internet, and (4) offering and making copies of McDonald's Nutrition Facts available to persons who telephoned or wrote to McDonald's headquarters.

The McDonald's Nutrition Facts document lists each individual food item that the restaurant serves. It does not list the Happy Meal®. The document then lists certain information about the menu items, such as the serving size of and number of calories in each item and the daily percent value of, *inter alia*, calcium, vitamins A and C, the number of calories and total fat.

■ Count I of Cohen's complaint alleged that McDonald's committed consumer fraud and deceptive business practices in violation of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2002)) (the Act). Section 2 of the Act states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS 505/2 (West 2002).

In particular, count I alleged that McDonald's violated the Act by: (1) misrepresenting that its food products have a nutritional value

that they do not have, (2) misrepresenting that its food products are of a particular standard quality or grade, (3) misrepresenting nutrient content values for foods targeted for consumption by children ages one to three, and (4) failing to adhere to the National Labeling and Education Act of 1990 (21 U.S.C. § 341 *et seq.* (2000)) (NLEA) nutritional requirements.

Count II of the complaint alleges that McDonald's committed common law fraud. Specifically, count II alleges that McDonald's knowingly made and continues to make one or more of the following false representations:

"(1) McDonald's represents that its food products have a nutritional value that they do not have; (2) McDonald's represents that its food products were of a particular standard, quality or grade where they are of another; (3) McDonald's includes toys intended for children ages one to three in its Happy Meals thereby offering a food product intended for children under 4 years of age without adequate revision of the nutritional information; and (4) McDonald's misrepresents nutrient content value for foods targeted for consumption by children, ages one to three."

On March 15, 2002, McDonald's filed a combined motion to dismiss Cohen's complaint pursuant to section 2—619.1 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—619.1 (West 2002)). In its section 2—619 motion to dismiss, McDonald's argued that Cohen's claims are preempted by federal law and regulations. In particular, McDonald's maintained that Congress has made the express determination that only the Food and Drug Administration (FDA) may regulate nutrition labeling. Additionally, McDonald's contended that the congressional grant of authority and extensive FDA regulations regarding labeling also impliedly preempt Cohen's claims. Alternatively, McDonald's argued that Cohen's cause of action should be dismissed under the doctrine of primary jurisdiction because the "FDA has the required 'specialized expertise' in branding and labeling of food and drinks."

In its section 2—615 motion to dismiss, McDonald's argued that Cohen's complaint failed to sufficiently state a cause of action. Relying on 21 C.F.R. §§ 101.9(j)(2)(i) and 101.10 (2003), McDonald's argued that all restaurants are generally exempt from making any nutritional declarations. McDonald's argued that the regulations that are the source of Cohen's complaint apply only to foods "represented or purported to be specifically for infants and children less than 4 years of age." 21 C.F.R. § 101.9(j)(5)(ii) (2003). Consequently, McDonald's concluded that the regulations do not apply to foods like hamburgers, french fries, and soft drinks that are intended for adults and children

over four years of age, even if they are sometimes consumed by children under four years of age.

On June 20, 2002, the trial court granted McDonald's motion to dismiss in its entirety. On July 16, 2002, Cohen timely filed his notice of appeal.

## ANALYSIS

Cohen argues that the trial court erred when it granted McDonald's motion to dismiss. Cohen argues that the trial court erred when it determined that his cause of action was barred by the doctrine of preemption.

■ McDonald's brought a combined motion to dismiss, relying on sections 2—615 and 2—619 of the Code. See 735 ILCS 5/2—619.1 (West 2000). A motion to dismiss under section 2—615 of the Code tests the legal sufficiency of a pleading. *Universal Scrap Metals, Inc. v. J. Sandman & Sons, Inc.*, 337 Ill. App. 3d 501, 504 (2003). The court accepts as true all well-pleaded facts and the inferences that can reasonably be drawn from those facts. *Universal Scrap Metals*, 337 Ill. App. 3d at 504. The issue is whether, when viewed in the light most favorable to the plaintiff, the allegations are sufficient to state a cause upon which relief can be granted. *Universal Scrap Metals*, 337 Ill. App. 3d at 504.

■ A section 2—619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other matters that act to defeat the claim. *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70 (2002). When ruling on a section 2—619 motion, the trial court may consider the pleadings, depositions, and affidavits. *Krilich*, 334 Ill. App. 3d at 570. The issue on appeal is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal is proper as a matter of law. *Krilich*, 334 Ill. App. 3d at 570. We review *de novo* the trial court's decision to grant a section 2—619.1 combined motion to dismiss. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634 (1996).

■ "Section 2—619(a)(1) provides for a dismissal when 'the court does not have jurisdiction of the subject matter of the action.' 735 ILCS 5/2—619(a)(1) (West 2002). The presence or absence of subject matter jurisdiction is determined from the nature of the case and the relief sought. *Kemling v. Country Mutual Insurance Co.*, 107 Ill. App. 3d 516, 520 (1982). Illinois circuit courts are courts of general jurisdiction having original jurisdiction over all justiciable controversies (Ill. Const. 1970, art. VI, § 9), except (1) cases over which the federal courts have exclusive jurisdiction (*The Moses Taylor v. Hammons*, 71 U.S. (4

Wall.) 411, 416, 18 L. Ed. 397 (1867) (the judicial power of the federal government is exclusive in some cases and, under the United States Constitution, may be made exclusive 'in all other cases at the election and discretion of Congress')), (2) matters committed to administrative tribunals (see Ill. Const. 1970, art. VI, § 9), and (3) those matters committed by the Illinois Constitution to the exclusive original jurisdiction of the Illinois Supreme Court (Ill. Const. 1970, art. VI, § 9). See 3 R. Michael, Illinois Practice §§ 1.2, 2.1 (1989)." *Russell v. Kinney Contractors, Inc.*, 342 Ill. App. 3d 666, 670-71 (2003).

■ McDonald's contends that the trial court properly granted its section 2—619 motion to dismiss on the ground that federal law preempts Cohen's state claims against it. "Under the preemption doctrine, which arises from the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl.2), we examine whether Congress intended for federal law to preempt state law in a given case. *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152, 73 L. Ed. 2d 664, 674-75, 102 S. Ct. 3014, 3022 (1982). Federal statutes and regulations can preempt state law in the following circumstances: (1) the language of the statute or regulation expressly preempts state law; (2) Congress implemented a comprehensive regulatory scheme in a given area, removing the entire field from state law; or (3) state law as applied conflicts with federal law. *Sprietsma v. Mercury Marine*, 197 Ill. 2d 112, 117 (2001), *cert. granted*, 534 U.S. 1112, 151 L. Ed. 2d 883, 122 S. Ct. 917 (2002). Where the statute or regulation contains language expressly preempting state law, ' "the task of statutory construction must *** focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." ' *Sprietsma*, 197 Ill. 2d at 120-21, quoting *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664, 123 L. Ed. 2d 387, 396, 113 S. Ct. 1732, 1737 (1993)." *Moskowitz v. Washington Mutual Bank, FA.*, 329 Ill. App. 3d 144, 146-47 (2002).

■ "The preemption doctrine provides that in some instances a federal law will override state laws on the same subject. *Kellerman*, 112 Ill. 2d at 438, 493 N.E.2d at 1049. The doctrine requires courts to examine the federal statute in question to determine whether Congress intended it to supplant state laws on the same subject. *Kellerman*, 112 Ill. 2d at 438, 493 N.E.2d at 1049. Absent explicit preemptive language, courts may infer Congress's intent to preempt where a federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it or where a federal statute touches a subject or an object in which the federal interest is so dominant that the federal system will be assumed to preclude the enforcement of state laws on the same subject. *Kellerman*, 112 Ill. 2d

at 438, 493 N.E.2d at 1049, citing *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698, 81 L. Ed. 2d 580, 588, 104 S. Ct. 2694, 2700 (1984).

■ Even when Congress has not completely displaced state regulation of a specific subject or object, state law is nullified to the extent that it actually conflicts with federal law. *Kellerman*, 112 Ill. 2d at 438-39, 493 N.E.2d at 1049; *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022 (1982). Actual conflicts arise when it is physically impossible to comply with both federal and state regulations or when state law interferes with the accomplishment and execution of the purposes and objectives of Congress. *Kellerman*, 112 Ill. 2d at 439, 493 N.E.2d at 1049; *de la Cuesta*, 458 U.S. at 153, 73 L. Ed. 2d at 675, 102 S. Ct. at 3022." *Crain v. Lucent Technologies, Inc.*, 317 Ill. App. 3d 486, 492 (2000).

■ Cohen's complaint is premised on McDonald's alleged violation of the NLEA and the regulations promulgated thereunder. The NLEA sets forth the types of standards and information that must be included on food labels, such as applicable serving size, calories, fat and cholesterol. 21 U.S.C. § 343(q)(1) (2000).

Cohen maintains that the nutritional values contained in the McDonald's Nutrition Facts document are only correct as applied to adults and children over the age of four. Since children under the age of four have different nutritional requirements than do adults, the NLEA establishes separate labeling requirements for foods specifically intended for children under the age of four. 21 C.F.R. § 101.9 (2003). In particular, the regulations accompanying the NLEA state that labeling for foods other than baby formula represented or purported to be specifically for infants and children under the age of four shall not include declarations of the percent of daily value for total fat, saturated fat, cholesterol, sodium, potassium, total carbohydrate, and dietary fiber. 21 C.F.R. § 101.9(j)(5)(ii)(A) (2003).

Cohen maintains that the McDonald's Nutrition Facts document violates this regulation with respect to its Happy Meal® menu item, which is specifically targeted to children from ages one to three. Furthermore a daily-calorie-intake footnote that is required for adult foods is similarly forbidden for food intended for infants and children under the age of four. 21 C.F.R. § 101.9(j)(5)(ii)(E) (2003). Cohen contends that the McDonald's Nutrition Facts document also violates this regulation.

Although Cohen makes these assertions, it is important to note that the NLEA exempts from any labeling requirements food that is served in restaurants. 21 U.S.C. § 343(q)(5)(A)(i) (2003) states:

"Subparagraphs (1), (2), (3) and (4) shall not apply to food—

(i) which is served in restaurants or other establishments in which food is served for immediate human consumption or which is sold for sale or use in such establishments."

Cohen acknowledges that restaurants are not required to provide any nutrition information for the foods they serve. Yet, Cohen argues that this exemption does not defeat his cause of action and relies on 21 C.F.R. § 101.9(j)(2)(i) (2003), which states:

"(j) The following foods are exempt from this section or are subject to special labeling requirements:

\* \* \*

(2) Food products which are:

(i) Served in restaurants, *Provided*, That the food bears no nutrition claims or other nutrition information in any context on the label or in labeling or advertising. Claims or other nutrition information subject the food to the provisions of this section." (Emphasis in original.)

Relying on this regulation, Cohen contends that because McDonald's took the step to provide the Nutrition Facts document, it therefore had the responsibility of also providing nutritional information for the Happy Meal® that must comport with the NLEA guidelines.

The NLEA does not provide a mechanism for private citizens to bring a cause of action against businesses for selling mislabeled foods. Consequently, Cohen has brought this state law claim based on the Act and common law fraud.

In an effort to create uniformity amongst the states regarding labeling requirements, a preemption provision was included in the NLEA which prohibits states from requiring additional nutritional information beyond that required by the NLEA. The NLEA's preemption provision reads as follows:

"(a) Except as provided in subsection (b) of this section, no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce—

\* \* \*

(4) any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title, except a requirement for nutrition labeling of food which is exempt under subclause (i) or (ii) of section 343(q)(5)(A) of this title[.]" 21 U.S.C. § 343—1(a)(4) (2000).

Cohen contends that this preemption provision does not prohibit state courts from hearing common law causes of action involving misleading nutrition information. To support his argument, Cohen

relies on *Morelli v. Weider Nutrition Group, Inc.*, 275 A.D.2d 607, 712 N.Y.S.2d 551 (2000), for the proposition that the NLEA preemption clause allows this instant cause of action.

In *Morelli*, the plaintiffs brought a New York state law deceptive-acts-and-misleading-business-practices claim that the defendants misrepresented the nutritional content of their sports nutrition product. Specifically, the plaintiffs brought a claim pursuant to sections 349 and 350 of the general business law for certain alleged misrepresentation by defendants with respect to the nutritional content of their sports nutrition product known as the "Power Bar."

The *Morelli* court held that the plaintiffs' claims were not preempted by the NLEA. *Morelli*, 275 A.D.2d 607, 712 N.Y.S.2d 557. In making this determination, the *Morelli* court made the following finding:

> "The sections of the General Business Law relied upon by plaintiffs do not conflict with the NLEA's preemptive provision (21 USC § 343—1[a]), which bars States from enacting requirements for food in interstate commerce that are not identical to those prescribed in the NLEA. Indeed, General Business Law § 349(d) specifically excludes from the statute's remedial ambit any act or practice subject to and in compliance with Federal rules, regulations or statutes. Plaintiffs' General Business Law claims then remain viable because defendants' alleged misconduct was not violative of the Federal standards set forth in the NLEA. In seeking redress for the alleged misconduct, plaintiffs do not seek, directly or indirectly, to impose liability for conduct sanctioned by the NLEA. That plaintiffs' remedial objectives are entirely consistent with the NLEA does not, however, render their action one to enforce the NLEA per se, which kind of action may only be instituted by the Federal Government, or by the States with Federal permission (21 USC § 337). Plaintiffs do not seek relief for violations of the NLEA, but for specific alleged violations of State statutes barring deceptive and misleading business practices in New York State. We perceive no reason to suppose that, in committing the power to enforce the NLEA to the Federal Government, Congress intended to limit a State's otherwise undoubted power to afford consumers within its borders a statutory remedy for injuries caused by knowingly deceptive and misleading business practices where, as here, such remedy in no way interferes with the Federal prerogative to promulgate and enforce uniform food labeling standards." *Morelli*, 275 A.D.2d at 607-08, 712 N.Y.S.2d at 552-53.

Relying on *Morelli*, Cohen argues that the trial court erred and that his cause of action is not preempted because the Act does not call for the enactment of requirements for nutritional labeling that are not

identical to those prescribed in the NLEA. In fact, Cohen argues that the Act and the NLEA would work hand in hand. Specifically, Cohen maintains that the Act would provide the basis for his recovery while the NLEA would provide the standard by which McDonald's nutritional information is to be measured. Cohen claims that if McDonald's can demonstrate that it complied with the NLEA, then it would defeat recovery in this suit. Cohen contends that the NLEA's preemption provision neither contemplates nor requires a blanket prohibition on state common law actions involving a violation of one of its prohibitions, as long as the defendant is not held to nutritional labeling standards that are different from those imposed by the NLEA.

Here, the trial court's decision was correct because Cohen's cause of action is in fact preempted. In this matter, Cohen contends that all this court would do is look to the NLEA for guidance to determine if McDonald's has committed common law fraud or committed a violation of the Act. If what Cohen was demanding from this court were that simple, then this cause of action would be similar to that which was brought by the plaintiffs in *Morelli*, and this claim could go forth. However, that is not the situation that we have here.

The nutritional values contained in the McDonald's Nutrition Facts document are only correct as applied to adults and children over the age of four years of age. This is uncontested. The NLEA, however, requires, *inter alia,* that labeling for foods that are intended for children under the age of four shall not include declarations of daily percent for such things as total fat, saturated fat and sodium.

We strongly note that the McDonald's Nutrition Fact sheet *never* mentions or makes reference to its Happy Meal® menu item. We also have very strong reservations about Cohen's attempt to categorize french fries and hamburgers as foods that are intended for children under the age of four. However, supposing for the sake of this discussion that the items that appear on the McDonald's Nutrition Facts document are indeed intended for children under the age of four, then the document violates this regulation because the daily percent values for these categories appear on the McDonald's Nutrition Facts document. Additionally, the McDonald's Nutrition Fact document contains a caloric footnote that should also not be included on labeling for foods that are intended for children under the age of four.

Cohen conceded in his brief and at oral argument that the federal government has not established the daily values of these nutrients for foods intended for children under the age of four and consequently has not established a regulatory scheme for how these things should be reported on labeling. To solve this dilemma, Cohen would have this court place labeling requirements on restaurants that provide foods

intended for children under the age of three where the federal government has not done so. Essentially, Cohen wants this court to fill holes in the NLEA where the federal government has yet to do so. This is a state court, not the FDA.

States cannot impose obligations that are different than federal law. This is because there is a danger that this action could cause non-uniformity amongst the different states. In this matter, ultimately, what Cohen is asking this state court to do is to interpret a federal statute. We do not have the authority to do so and will not. As such, this cause of action is preempted, and the trial court's decision to dismiss pursuant to section 2—619 was correct.

Because of our determination here, there is no need to address the merits of the trial court's decision to also dismiss this matter pursuant to section 2—615.

### CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

CAMPBELL, P.J., and O'BRIEN, J., concur.