# Illinois Official Reports

## Appellate Court

---

### *In re Parentage of D.S.*, 2021 IL App (1st) 192257

---

| | |
|---|---|
| Appellate Court Caption | *In re* PARENTAGE OF D.S., a Minor (Colton S., Petitioner-Appellant, v. Aura C.-K., Respondent-Appellee). |
| District & No. | First District, Second Division<br>No. 1-19-2257 |
| Filed | April 27, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2018-D-8002; the Hon. Edward A. Arce, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Lou Karnezis, of Karnezis Law Group LLC, of Park Ridge, for appellant.<br><br>No brief filed for appellee. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Justices Lavin and Pucinski concurred in the judgment and the opinion. |

**OPINION**

¶ 1        Petitioner-Appellant, Colton S., filed a petition seeking a declaration of parentage and allocation of parental responsibilities for D.S., the daughter of respondent-appellee, Aura C.-K. Respondent moved to strike the petition for parentage pursuant to section 622 of the Illinois Parentage Act of 2015 (Parentage Act) (750 ILCS 46/622 (West 2018)), which prohibits the allocation of parental responsibilities to men who father through sexual assault or abuse or otherwise nonconsensual sexual penetration. The court granted respondent's motion and dismissed petitioner's petition with prejudice. Petitioner now appeals, arguing that dismissal was improper because the court failed to address the effect of consent under section 622(b). For the following reasons, we affirm.

¶ 2                                           I. BACKGROUND

¶ 3        Respondent was born on April 16, 2001. She has known petitioner since December 2016 and, at some point, had a sexual relationship with him. On December 12, 2017, at the age of 16, respondent gave birth to D.S. in Cook County.

¶ 4        On September 12, 2018, pursuant to section 601 of the Parentage Act, petitioner filed a petition to establish parentage and for allocation of parental responsibilities for D.S. In his petition, he alleged that D.S. currently resides with him, that respondent is unfit, and that it is in D.S.'s best interest for petitioner to be adjudicated her father and allocated sole parental and decision-making responsibilities.

¶ 5        On November 13, 2018, respondent filed an answer, *pro se*, denying that she is unfit to exercise parental responsibilities. Respondent also stated that petitioner "is an unfit parent" and that she had requested a paternity test because she did not believe that petitioner was D.S.'s father.

¶ 6        On December 24, 2018, respondent filed an "Emergency Motion for Temporary Restraining Order Injunctive and Other Relief and an Immediate Surrender of the Child." In the motion, respondent stated that while she was living at her great-grandmother's home, "sometime in September/October 2018 D.S. began to live with [petitioner's] parents and [she] would visit and enjoy parenting time on a daily basis." However, after filing the instant petition, petitioner and his parents began to restrict respondent's ability to see D.S. Respondent argued that she did not consent to petitioner's parenting time and that he was in violation of section 622 of the Parentage Act. As such, respondent requested the court order the immediate return of D.S. to her care. Attached to her emergency motion was an affidavit in which she averred that she was 15 years old, and petitioner was 18 years old when they initiated their sexual relationship. She further averred that petitioner was emotionally and physically abusive throughout their relationship. The court denied the motion, finding that an emergency did not exist.

¶ 7        At some point, the Department of Children and Family Services (DCFS) became involved, and on December 28, 2018, DCFS issued a "safety plan," naming petitioner the custodial parent.

¶ 8        On January 7, 2019, respondent filed an "Affirmative Petition and/or Motion to Strike Petitioner's Petition to Establish Parentage and for Allocation of Parental Responsibilities" pursuant to section 622(f) of the Parentage Act. Again, respondent argued that allocation of

parental responsibilities to petitioner was prohibited under section 622 because conception of D.S. was the result of nonconsensual sexual intercourse and she did not consent to petitioner's parenting time.

¶ 9    On February 6, 2019, petitioner filed a response wherein he confirmed that he was 19 years old, and respondent was 16 years old when D.S. was born. Subsequently, on February 13, 2019, petitioner filed a memorandum of law in response to respondent's motion to strike. In the memorandum, petitioner argued that the issue before the court was "whether [respondent] consented to the exercise of [p]etitioner's parental rights." In that regard, he asserted that respondent and her family had consented to petitioner's parenting time and parental responsibilities since D.S. was born and that she is only now objecting to his parenting. Petitioner further argued that it would be in the best interest of D.S. to allow him parental responsibilities.

¶ 10    Attached to the memorandum was the DCFS "safety plan" dated December 28, 2018. The document identified the "safety threat" as a caregiver or member of the household, namely respondent, "whose behavior is violent and out of control." The document stated that respondent was required to attend anger management and parenting classes and would only be permitted supervised visits with D.S. at petitioner's parents' house. Additionally, two police reports were also attached to the memorandum as exhibits. In the first, respondent reported an online threat made against her grandmother, and in the second, respondent had been reported to police as missing by her grandmother, but she returned home stating that she had just been lost in Chicago.

¶ 11    A hearing was held, at which counsel for respondent contextualized the issue before the circuit court as one of standing. Prior to receiving evidence, the court commented that it would be a "tight hearing" on the issue of standing and not "fitness." The following testimony was presented.

¶ 12    Petitioner testified that he was born on June 1, 1998, and has one child, D.S., with respondent. He confirmed that he is listed on D.S.'s birth certificate as the father. He stated that he met respondent in December 2016.

¶ 13    Respondent testified that petitioner is the father of her child and that she was 15 years old when D.S. was conceived. Respondent never complained to the police that petitioner had sexual intercourse with her against her will. She also testified that petitioner was mentally, physically, and verbally abusive toward her but she never called the police to complain about petitioner's abuse because she was afraid. Finally, respondent testified that she did not consent either to petitioner, or to anyone in his family, parenting her child.

¶ 14    Amy S., petitioner's mother, testified that she met with representatives from DCFS while respondent was present and, on those occasions, respondent did not complain that the sexual intercourse between her and petitioner was nonconsensual. She further testified that respondent never complained to her that petitioner was abusive.

¶ 15    After the hearing, respondent filed a memorandum of law in support of her motion to dismiss, in which she argued that petitioner's reading of the Parentage Act would negate its obvious intent to protect victims from their assailants and would permit rapists to remain involved with their victims and resulting children through coercion or charm. She also argued that a "best interest of the child" analysis is simply not contemplated by section 622. Petitioner filed a reply, reasserting his argument that respondent consented to petitioner's parenting of

D.S. "long ago" and that the Act does not support a reading that would allow respondent to simply revoke her consent whenever it is convenient for her.

¶ 16 On October 8, 2019, the circuit court dismissed the petition with prejudice. In doing so, the court concluded that respondent has established by "clear and convincing evidence" that petitioner had "committed an act of non-consensual sexual penetration for his conduct in fathering that child" due to respondent's age, which rendered her "incapable of giving consent to an act of sexual penetration."

¶ 17 This appeal followed.

¶ 18 II. ANALYSIS

¶ 19 As an initial matter, we note that respondent has failed to file a brief in this appeal. Generally, we will not act as an advocate for an appellee who fails to file a brief or search the record for the purpose of sustaining the court's judgment. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). However, failure to file a brief does not require an automatic reversal, and the appellant continues to bear the burden of establishing error. *Id.* at 131-32. "When the record is simple, and the claimed errors are such that this court can easily decide them on the merits without the aid of an appellee's brief, this court should decide the appeal on its merits." *Plooy v. Paryani*, 275 Ill. App. 3d 1074, 1088 (1995). We find that the record and the issues involved herein are straightforward and clear enough that the appeal should be decided on its merits.

¶ 20 A. Standard of Review

¶ 21 The issue before us is whether the circuit court erred in dismissing with prejudice the petition to establish parentage and allocate parental responsibility or parental time. Before turning to the merits of petitioner's arguments, we must first determine under which section of the Code of Civil Procedure (Code) the dismissal should be analyzed. See 735 ILCS 5/2-615, 2-619 (West 2018). The circuit court did not identify which section of the Code served as the basis for dismissal, and other than section 622(f) of the Parentage Act, respondent cites no other statutory provision as the basis for which the petition should be stricken. Throughout his brief, petitioner argues, in the main, that dismissal under section 2-615 was not appropriate as there are facts that may be proven, which would defeat dismissal. He maintains, however, that dismissal under either section 2-615 or 2-619 of the Code was improper. Thus, reversal is warranted.

¶ 22 Section 2-615 provides that a pleading or portion thereof may be stricken because it is substantially insufficient in law. *Id.* § 2-615. That is, a motion filed under section 2-615 tests the legal sufficiency of the pleading. *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 632 (2004). In such a case, the court accepts as true all well-pleaded facts and reasonable inferences to be drawn from those facts and determines whether the allegations are sufficient to state a cause upon which relief may be granted. *Id.*

¶ 23 On the other hand, a motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the pleading and raises defects, defenses, or other affirmative matters that act to defeat the claim. *Id.* Thus, the issue is whether, after reviewing the pleadings, depositions, and affidavits, there is a genuine issue of material fact that precludes dismissal, or whether dismissal is proper as a matter of law. *Id.*

¶ 24    In evaluating a circuit court's dismissal, we look at the substance of the motion to dismiss, not its label. See *Winters v. Wangler*, 386 Ill. App. 3d 788, 793 (2008). Respondent stated in her petition or motion to strike that it was filed pursuant to section 622(f) of the Parentage Act. That subsection permits the mother (or guardian of the mother) to file a petition as "an affirmative defense in any proceeding filed by the person described in subsection (a) of this Section regarding the child." 750 ILCS 46/622(f) (West 2018). Section 2-619(a)(9) permits dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). Because section 622 was intended as an affirmative defense in a proceeding that has already been instituted, we construe respondent's filing as a motion to dismiss pursuant to section 2-619 of the Code, which, as stated, admits the legal sufficiency of the pleading but raises an affirmative defense to defeat the claim.

¶ 25    "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). "An 'affirmative matter' in this instance is something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Anderson v. Chicago Transit Authority*, 2019 IL App (1st) 181564, ¶ 21. It is the moving party's burden to establish the affirmative matter defeating the nonmoving party's claim. *Pruitt v. Pruitt*, 2013 IL App (1st) 130032, ¶ 14. In ruling on a section 2-619 motion, all pleadings and supporting documents must be construed in a light most favorable to the nonmoving party, and the motion should be granted where no material facts are in dispute and the defendant is entitled to dismissal as a matter of law. *Kheirkhahvash v. Baniassadi*, 407 Ill. App. 3d 171, 176 (2011). However, "[i]f the affidavits present disputed facts, the parties must be afforded the opportunity to have an evidentiary hearing." *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 913 (1993).

¶ 26    In the present case, the court held an evidentiary hearing and thus we " 'must review not only the law but also the facts, and may reverse the trial court order if it is incorrect in law or against the manifest weight of the evidence.' " *Hernandez v. New Rogers Pontiac, Inc.*, 332 Ill. App. 3d 461, 464 (2002) (quoting *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 13 (1989)). A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Offord v. Fitness International, LLC*, 2015 IL App (1st) 150879, ¶ 16. Because this appeal involves interpretation of the Parentage Act, which is an issue of law, our review is *de novo*. *Unzicker v. Kraft Food Ingredients Corp.*, 203 Ill. 2d 64, 74 (2002). Accordingly, we review whether the trial court's findings of fact are against the manifest weight of the evidence while reviewing the questions of law *de novo* (*Offord*, 2015 IL App (1st) 150879, ¶ 15), and we may affirm the court's dismissal based on any grounds supported by the record (*King v. City of Chicago*, 324 Ill. App. 3d 856, 859 (2001)).

¶ 27                                              B. Parentage Act

¶ 28    Section 622 of the Parentage Act, enacted in 2016, is titled "Allocation of parental responsibilities or parenting time prohibited to men who father through sexual assault or sexual abuse" and provides, in pertinent part, as follows:

"(a) This Section applies to a person who has been found to be the father of a child under this Act and who:

(1) has been convicted of or who has pled guilty or *nolo contendere* to a violation of Section 11-1.20 (criminal sexual assault), Section 11-1.30 (aggravated criminal sexual assault), Section 11-1.40 (predatory criminal sexual assault of a child), Section 11-1.50 (criminal sexual abuse), Section 11-1.60 (aggravated criminal sexual abuse), Section 11-11 (sexual relations within families), Section 12-13 (criminal sexual assault), Section 12-14 (aggravated criminal sexual assault), Section 12-14.1 (predatory criminal sexual assault of a child), Section 12-15 (criminal sexual abuse), or Section 12-16 (aggravated criminal sexual abuse) of the Criminal Code of 1961 or the Criminal Code of 2012, or a similar statute in another jurisdiction, for his conduct in fathering that child; or

(2) at a fact-finding hearing, is found by clear and convincing evidence to have committed an act of non-consensual sexual penetration for his conduct in fathering that child.

(b) A person described in subsection (a) shall not be entitled to an allocation of any parental responsibilities or parenting time with that child without the consent of the child's mother or guardian. If the person described in subsection (a) is also the guardian of the child, he does not have the authority to consent to parenting time or the allocation of parental responsibilities under this Section. If the mother of the child is a minor, and the person described in subsection (a) is also the father or guardian of the mother, then he does not have the authority to consent to the allocation of parental responsibilities or parenting time.

\* \* \*

(f) A petition under this Section may be filed by the child's mother or guardian either as an affirmative petition in circuit court or as an affirmative defense in any proceeding filed by the person described in subsection (a) of this Section regarding the child." 750 ILCS 46/622 (West 2018).[1]

¶ 29     "The cardinal rule of statutory construction is to ascertain and give effect to the legislature's true intent." *Unzicker*, 203 Ill. 2d at 75. Intent should be determined more from consideration of the reason and necessity, objects, and purposes of the law than from its language. *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 21. The court considers statutory language in light of the statute's purposes and evils the law was designed to remedy. *Id.* Details of the statute should be construed in conformity with its dominant purpose. *Chrysler Credit Corp. v. Ross*, 28 Ill. App. 3d 165, 172 (1975). The court's construction should be in such a manner as will accomplish those objects sought by their enactments. *In re Petition of K.M.*, 274 Ill. App. 3d 189, 195 (1995). If the plain language of a statute is clear and unambiguous, we will give that meaning effect without resort to other aids of statutory construction. *Palm v. Holocker*, 2018

---

[1]" 'Parental responsibilities' " is defined in section 600(d) of the Illinois Marriage and Dissolution of Marriage Act as "both parenting time and significant decision-making responsibilities with respect to a child." 750 ILCS 5/600(d) (West 2018). " 'Parenting time' " is defined in section 600(e) of the Illinois Marriage and Dissolution of Marriage Act as "the time during which a parent is responsible for exercising caretaking functions and non-significant decision-making responsibilities with respect to the child." *Id.* § 600(e).

IL 123152, ¶ 21. The court, of course, must view the statute as a whole, construing the words and phrases in light of the other relevant statutory provisions. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 35. Finally, we may not depart from a statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *In re Hernandez*, 2020 IL 124661, ¶ 18.

¶ 30     Because the parties were never married, the Parentage Act (750 ILCS 46/101 *et seq.* (West 2018)) governs the particular proceedings in this case. In enacting the Parentage Act, the General Assembly established a "statutory mechanism that serves to legally establish parent and child relationships in Illinois." *In re Estate of Poole*, 207 Ill. 2d 393, 404 (2003).[2] The purpose of the Parentage Act is to further the public policy of Illinois to "recognize[ ] the right of every child to the physical, mental, emotional, and financial support of his or her parents." 750 ILCS 46/102 (West 2018); *J.S.A. v. M.H.*, 224 Ill. 2d 182, 198 (2007).

¶ 31     Section 622(a) of the Parentage Act identifies the population of men who are prohibited from allocation of parental responsibilities or parenting time. Subsection (a)(1) specifically identifies men who were either convicted or pled guilty to a criminal sexual offense. 750 ILCS 46/622(a)(1) (West 2018). Subsection (a)(2) specifically identifies men who fathered children resulting from nonconsensual sexual penetration, thereby including perpetrators of sexual abuse or sexual assault, but who have not been convicted. Under section 622, a fact-finding hearing is mandated for purposes of determining paternity for men who fit within the definition of subsection (a)(2). *Id.* § 622(a)(2). Significantly, subsection (b), which we characterize as one of the section's several consent provisions, identifies those individuals, generally the mother, who may consent, by means of an affirmative petition, to an offender father's parental responsibilities and parenting time.[3] *Id.* § 622(b). The consent provisions are without limitation, conditions, or exceptions. Subsection (f) sets out the manner in which the mother may either give or object to consent in any proceeding filed by persons identified in subsection (a). Overall, section 622 is a legislative acknowledgment that a mother's will was either overborn, such that no consent was given, or that due to the age of minority, no consent could be given for the sexual conduct that produced a child. The practical effect of the section is to prohibit persons described in section (a) from the rights and enjoyment of parenting unless consented to by the mother. In our view, the section promotes Illinois's strong public policy against victimized women suffering revictimization that would result from an offender father engaging in parental privilege with the victim mother.

¶ 32     Petitioner does not dispute the circuit court's finding that there is clear and convincing evidence that petitioner committed an act of nonconsensual sexual penetration, which resulted in D.S.'s conception. We agree with the finding as well, as it is supported by the evidence presented at the hearing. "[T]he prescribed age of consent in Illinois is 17 ***." *People v.*

---

[2]The Parentage Act of 1984 was repealed in its entirety (see Pub. Act 99-85, § 977 (eff. Jan. 1, 2016)) and replaced by the Parentage Act of 2015 (see Pub. Act 99-85, § 101 (eff. Jan. 1, 2016) (adding 750 ILCS 46/101 *et seq.*)). Section 6-5 in the prior act was retained as section 622 in the current act.

[3] Under subsection (c), the mother is given authority to "decline support and maintenance obligations from the father." 750 ILCS 46/622(c) (West 2018). Under subsection (d), the mother is given authority to consent to the father having "inheritance or other rights," otherwise he is not entitled to any. *Id.* § 622(d). And finally, under subsection (e), the mother is given authority to consent to relatives of the father petitioning for parental responsibilities or parenting time. *Id.* § 622(e).

*Lloyd*, 2013 IL 113510, ¶ 30; see also 720 ILCS 5/11-1.50(c) (West 2018) (the offense of criminal sexual abuse occurs where the victim is "at least 13 years of age but under 17 years of age" and the person who committed the act of sexual penetration is "less than 5 years older than the victim"). Regardless of respondent's testimony that petitioner "forced" her to have sex with him and that he was abusive toward her throughout their relationship, a lack of consent is presumed by law due to respondent's age. Thus, under subsection (a)(2), petitioner is prohibited from parenting time with the child. The only contested issue in this case is whether the mother's alleged prior consent to petitioner's parenting time, once given, may be withdrawn.

¶ 33    Both petitioner and respondent argued the issue of consent to parental responsibilities and parenting time in their memoranda related to the evidentiary hearing. The circuit court, however, limited the fact-finding hearing to the issue of whether subsection (a) was applicable to petitioner. The court's order following the hearing did not address consent to parental responsibilities whatsoever. We note the circuit court's mention of "consent" in its order. Clear from the language, however, is that the court's ruling was with regard to the issue of consent to sexual penetration, as opposed to consent to parenting.

¶ 34    We believe that the circuit court's ruling, which made no factual findings on the issue of consent, was consistent with the objects of the Parentage Act, protection of the mother's right to withhold consent without fear of coercion by the offender father. Other than subsection (a)(2)'s provision for a hearing to determine whether conception resulted from nonconsensual sexual penetration, section 622 mandates no judicial determination of any kind on any issue covered in this provision.

¶ 35    Petitioner argues in his brief that respondent's prior consent to petitioner's parenting, which he claims is evidenced by a variety of actions taken prior to the instant action, should foreclose respondent from asserting her rights to decide whether petitioner is permitted to parent the child. Essentially, he argues that the statute should be construed as requiring a judicial determination of whether the mother has previously consented at any point to the father's parenting of the child. He further argues that the DCFS safety plan lends credence to his assertion that respondent had previously consented to his parenting privileges.

¶ 36    We note language in the circuit court's order that there was "no evidence in the record that DCFS conducted a fact-finding hearing prior to placing the child with the [p]etitioner." Regardless, although nothing in section 622 of the Parentage Act bars a mother from giving consent without the filing of a petition, neither does anything in the Parentage Act bind her to a prior given consent. To ensure against a victim mother's unwelcome shared parenting with an offender father, or potential coerced consent, the Parentage Act provides a mechanism by which she may statutorily express her intent to either allow or to bar the same. See 750 ILCS 46/622(f) (West 2018). No affirmative petition appears in the record. Not only is petitioner's interpretation not supported by the plain language of the statute, but it is also contrary to the legislature's intent to vest in the mother, who conceived as a result of conduct defined in subsections (a)(1) or (a)(2), complete autonomy to decide the issue of parenting rights. Further, to read the statute as petitioner urges creates the opportunity for an offender father, who might have obtained the mother's consent as a result of coercion, to do exactly that which the Parentage Act seeks to protect against.

¶ 37    Petitioner additionally argues that the court's dismissal of his petition is not only contrary to the plain language of the statute, the policy of our state, but also the best interest of the minor

child, "the guidepost for all actions involving minor children, and the very purpose of the Act." To be clear, petitioner brought this action under the Parentage Act. Petitioner misses the point of section 622. A determination of parentage does not automatically vest in the father parental rights when fatherhood was the result of what the state has defined as illegal or criminal sexual conduct. Absent a mother's free and unfettered consent, fathers identified in section 622(a)(2) of the Parentage Act shall not enjoy either parenting responsibilities or parenting time. Subsection (f) provides the mechanism by which that consent, in the discretion of the mother, may be permitted or barred.

¶ 38    Further, section 622 parentage proceedings are not proceedings like those under the Adoption Act (750 ILCS 50/1 *et seq.* (West 2018)), the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2018)), or the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 2018)) in which custody determinations are guided by the overriding principle of the best interest of the child. Notably, this matter was not joined with any other permissible proceeding in which such determinations are required. See 750 ILCS 46/611(a) (West 2018) (except as provided in subsection 611(b), a proceeding to adjudicate parentage may be joined with another appropriate proceeding, such as for adoption or termination of parental rights). Further, if under section 622, "in the best interest" were to present as an overriding factor to consent, in cases where a mother is determined to be unfit, as is alleged here, the offender father might be awarded parental privileges, despite his prior offending conduct. Clearly, such a result would be in contravention of the Parentage Act. In any case, had the legislature intended the mother's consent under section 622 to be subject to a best interest of the child analysis, nothing precluded it from saying so.

¶ 39    Petitioner points to no case which construes section 622(b) of the Act, and we are only aware of one, *Deaver v. Jordan*, 2020 IL App (5th) 200084-U.[4] In *Deaver*, the circuit court granted the father's petition for parenting time. *Id.* ¶ 16. On appeal, the mother argued that the court erroneously interpreted section 622 of the Parentage Act in determining that both she and her adoptive mother had previously consented to the father having parenting time with the child. *Id.* ¶ 22. A divided panel of the Fifth District Appellate Court affirmed the circuit court's ruling, finding that the plain language of section 622(b) allows for allocation of parental responsibilities where the minor mother consents, the evidence supported a conclusion that she had consented, and the best interest of the child would be served by allocating parental responsibilities to the father as he had already established a relationship with the child. *Id.* ¶ 29. The court held that a showing of prior consent was sufficient to nullify the applicability of section 622. *Id.* The court further stated: "The plain language of 622(b) does not require a mother's continued or ongoing consent for each exercise of parental responsibility or each exercise of parenting time by the father." *Id.* The dissent, however, came to the opposite conclusion. The dissent took the position that after finding that the father fit within the definition of section 622(a)(2), the court had no authority to enter an order of parental responsibilities "*unless* the minor mother is in agreement," which she was not in this case, as evidenced by the contentious legal dispute. (Emphasis in original.) *Id.* ¶¶ 38-39 (Barberis, J.,

_____

[4]This order was issued pursuant to Illinois Supreme Court Rule 23 (eff. Apr. 1, 2018) prior to January 1, 2021. Therefore, the recent amendment to Rule 23(e)(1) is inapplicable as the Fifth District did not intend for it to serve persuasive value. Even so, this court is not bound by even published rulings from other districts, divisions, or panels. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008).

dissenting). The dissent rejected the majority's conclusion that the father was permitted parental responsibilities based on the mother's prior consent. *Id.*

¶ 40    We believe that the dissent in *Deaver* reached the correct result. Here, respondent filed an affirmative defense to the petition seeking parental responsibilities and parenting time. Even assuming her prior consent, other than filing her affirmative defense to bar parenting time, nothing more in the statute is contemplated and nothing more in the statute is required.

¶ 41    We are not unaware of the potential dangers to which petitioner alludes should a mother be permitted to give and then withdraw consent. We trust that the legislature was also aware of this possibility in enacting the statute. However, we believe that the parenting rights vested exclusively in the mother strike the proper balance under the circumstances addressed by this section of the Parentage Act. Further, as section 622(f) makes available the filing of an affirmative petition, we believe that the likelihood of repeated withdrawals of consent is diminished. We would also point out that it is no more likely that consent, once given, will be withdrawn than it is that once given it would not be. In any case, given the objects of section 622, the possibility that a mother might change her mind is not reason either to graft on exceptions or to ignore the plain language of the Parentage Act.

¶ 42    Additionally, the absence in section 622 of any procedural directives to the courts supports a conclusion that the legislature did not intend a mother's consent to be subject to complex and a potentially protracted judicial determination. The legislature's silence in this regard comports with an interpretation that the mother's consent is to be determined upon the filing of either an affirmative petition or defense, as it would likely be a straightforward determination. We also find it implausible that the legislature intended for the clause to operate on the basis of prior consent. Notably, in the case of a mother, not yet of majority age, any alleged prior "consent" would not be informed or knowing, as it is likely that she would lack knowledge of her legal authority under this section to deny parental privileges to an offender father.

¶ 43    Finally, when viewing the plain language of the Parentage Act—a person qualifying under subsection (a) *shall not* be allocated parental responsibilities *without the consent* of the mother—the consent clause suggests a present tense. If the legislature had intended nullification of the provision based on the mother's prior consent, it would have used the past tense. For example, the clause may have been worded instead as "unless the mother has consented." Because the clause is written in the present tense, it logically follows that consent is to be determined based upon the mother's filing of an affirmative petition—not by some other means at some other time in the past.

¶ 44    We note as an aside that Illinois enacted section 622 around the time when there was a nationwide effort to enact legislation allowing a parent to terminate the parental rights of a person who fathered a child through rape.[5] This was in no small part due to Congress passing

_____

[5]Although several other states have statutes prohibiting a father whose child was conceived as a result of sexual assault or nonconsensual sexual intercourse from enjoying parental privileges, none appear identical to statute at issue. For instance, others may require express written consent from the mother, require the court to conduct a best-interests analysis, or some combination of the two before waiving application of the statute. Moreover, these statutes, just as ours, are relatively new and many have not been subjected to judicial interpretation. See Anastasia Doherty, *Choosing to Raise a Child Conceived Through Rape: The Double-Injustice of Uneven State Protection*, 39 Women's Rts. L. Rep. 220, 314-56 (2018) (Tables 3 to 6).

the Rape Survivor Child Custody Act to incentivize state legislation with federal funding. See 34 U.S.C. § 21301 (2018). It was against this backdrop that Illinois, and several other states, enacted laws to provide agency for a victim-mother who has chosen to raise a child, conceived out of rape, and to prevent a revictimization or "a second injustice in finding no legal protection against custody or visitation being awarded to a rapist parent." Anastasia Doherty, *Choosing to Raise a Child Conceived Through Rape: The Double-Injustice of Uneven State Protection*, 39 Women's Rts. L. Rep. 220, 224 (2018).

¶ 45 Here, our review of the record demonstrates that respondent not only made clear in her pleadings that she does not currently consent to an allocation of parental responsibility to petitioner but, additionally, during the hearing on the issue of parentage, she also testified that she does not consent to him or his family members parenting D.S. Although the circuit court did not expressly rule on respondent's affirmative defense to the petition, as our review is *de novo*, we do so here and find that, pursuant to subsection (b), petitioner is prohibited from parental responsibilities and parenting time. Petitioner's references to respondent's past behavior, police reports, and the safety plan are irrelevant in these proceedings. The only issue is consent, and respondent having presented an affirmative defense, no amendment of petitioner's petition could alter that result.

¶ 46 We hold that section 622(a)(2) is applicable to petitioner and, pursuant to section 622(f), respondent has presented an affirmative matter cognizable under section 2-619 of the Code. Accordingly, the circuit court did not err in dismissing the petition with prejudice.

¶ 47 That said, having reviewed the record, it does not escape our notice that the minor in this case may require, for her well-being, intervention from the appropriate state agencies charged with ensuring the physical and emotional well-being of minors. The absence of a stable home environment can have long-lasting negative effects on every aspect of a child's development. Here, we hold only that respondent has not consented to petitioner's request for parental responsibilities and parenting time for D.S. Nothing in this court's opinion, however, should be read to impede the activities of any appropriate state agencies in the discharge of their duties on behalf of the minor child. Neither, by our holding, are either of the parties foreclosed from the filing of any future petitions.

¶ 48                                    III. CONCLUSION
¶ 49 For the reasons stated, we affirm the judgment of the circuit court.

¶ 50 Affirmed.